**KIRBY AISNER & CURLEY LLP**
*Proposed Attorneys for the Debtor*
700 Post Road, Suite 237
Scarsdale, New York 10583
(914) 401-9500
Dawn Kirby, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

                                                  Chapter 11

INSPIRION, INC.,                              Case No. 19-23534 (rdd)

                                  Debtor.
----------------------------------------------------------X

### <u>DECLARATION OF ALEN GERSHKOVICH PURSUANT TO LOCAL RULE 1007-2</u>

      ALEN GERSHKOVICH, being duly sworn, deposes and says:

    1.    I am the sole shareholder and President of Inspiron, Inc. (the "<u>Debtor</u>"), and I submit this affidavit pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

    2.    Inspiron, Inc., (the "Debtor" or "Inspiron") is a construction company offering general contractor services, construction management services and advisory services since 2010.

    3.    Examples of the Debtor's work include Sushi Samba in Manhattan, Brooklyn Mirage concert venue, Bowery Kitchen, Luna Park and "Scream Zone" in Coney Island, the Monsignor Farrell High School in Staten Island, and the Eileen Fisher offices in Manhattan.

### <u>BACKGROUND</u>

    4.    The Debtor is currently actively engaged in six projects referred to as East Third Street, 8 St. Marks, Bergen Street, Cornell, 120 Java and 1 Nassau.

    5.    In each of the projects, the Debtor expect future income to cover all subcontractors hired on the project.  In addition to paying all subs in full, the Debtor expects to make a healthy

profit in four projects, to break even on one project, and is currently renegotiating one project that was improperly estimated by a former employee of the Debtor.

6.      The reason for the Debtor's financial distress, despite its healthy business operations, is that it has been plagued with litigation.

7.      Specifically, Sky Materials Corp. ("Sky") sued the Debtor for approximately $1.8 million dollars, and the Debtor counter-sued Sky for breach of contract, failure to perform, and walking off the project.  The case is captioned, *Sky Materials Corp. v. Inspiron, Inc., AK 511 Ventures, LLC, Alan Gershkovich and Kenneth Hart*, Supreme Court, New York County, Index No. 652047/2017 (the "Sky Action").

8.      The other defendants in the Sky Action are AK 511 Ventures, LLC ("AK 511") and Kenneth Hart ("Hart").  Mr. Hart and I are 50/50 owners of AK 511, another general contracting company that he and I determined to cease operating and wind down.

9.      Sky was a subcontractor on two projects – 146th Street and 82nd Street.  During those projects, Sky came to me alleging it was out of funds and would be forced to shut down and walk off the projects if it didn't acquire financing or obtain advances on the work it was supposed to perform.  I agreed, on behalf of the Debtor, to advance monies to Sky, to be repaid from future funds Sky earned in connection with the project.  I financed approximately $2.5 million dollars to Sky (the "Loan").

10.     Never-the-less, Sky walked off the project, leaving the Debtor with costs in excess of approximately $1 million in costs to remedy Sky's deficient work product and abrupt departure.

11.     I was shocked to learn Sky commenced the Sky Action seeking payment under a bizarre theory that the Loan advanced to Sky should only be set off against monies due to Sky on the 146th Street project, not monies due to Sky on the 82nd Street project.  That thinking is preposterous

because it results in Sky being owed "zero" on the 146th Street project, but still owing the Debtor $1,060,000 on the Loan, and Sky being owed $1.7 million on the 82nd Street project.

12.    In reality, applying the Loan obligation across both the 146th Street project and the 82nd Street project, Sky may have potentially been entitled to further paymenthad it fully performed its work under the contracts made with Debtor. .   However, since Sky performed deficient work and abruptly walked off the projects, causing the Debtor $1 million in damages, Sky actually owes the Debtor monies of at least  $400,000.

13.    As a direct result of the Sky Action, the Debtor was also sued in another action (the "Hart Action") that it wishes to efficiently resolve in the Bankruptcy Court, *Kenneth Hart v. Alen Gershkovich, Inspiron, Inc., Inspiron Construction, Inspiron Construction Management, AK 511 Ventures, LLC*, Supreme Court, New York County, Index No. 654100/2018.

14.    Mr. Hart and I, as 50/50 owners of AK 511, agreed to wind down the company.  We agreed that I would cause the Debtor to complete certain projects on behalf of AK 511, and the profits would be split as agreed.  Upon information and belief, because AK 511 was named in the Sky Action, Mr. Hart sued the Debtor and me in the Hart Action.  The cases are somewhat intertwined, and I am named in the Hart Action because I allegedly simply caused or did not cause the Debtor to perform in a certain way (which claims are untrue, and in any event, I am not personally obligated for either Debtor's or AK 511's obligations).

15.    With this chapter 11 case the Debtor intends to stop bleeding litigation expenses and to efficiently collect the funds due to it.

16.    In order to save costs and maintain the Debtor's financial status, I was recently forced to lay off nine (9) employees, both executives and staff.  I may have to lay off more.  Other cost-cutting measures include subletting an entire floor formerly used by the Debtor for secondary office

space and arranging for a less expensive and smaller space.  The move in currently underway.

17.    The Debtor believes that the chapter 11 case and the automatic stay will allow it to focus its attention on completing its current the six projects to the benefit of all of the project owners and all of the subs that are working for the Debtor on those projects.

18.    In this manner the Debtor intends to resolve its dispute with Sky, which has been damaging the Debtor's operations, and exit from chapter 11 as a restructured, stronger company.

19.    My desire is to utilize the bankruptcy process in order to restructure and reorganize the Debtor's affairs.   With the help of counsel, I believe the company will be able to restructure its affairs and propose a plan of reorganization that it is in the best interests of its creditors and affords them the greatest recovery possible.

20.    The needs and interests of the Debtor's creditors will best be served by the continued possession of its property and management of its affairs as debtor-in-possession under Chapter 11 until confirmation of a reorganization plan.

## **INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007**

21.    In addition to the foregoing, Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

**Local Rule 1007-2(a)(1)**

22.    The nature of the Debtor's business and the circumstances leading to this Chapter 11 case are set forth above.

**Local Rule 1007-2(a)(2)**

23.    This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

**Local Rule 1007-2(a)(3)**

24.     Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

25.     A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) was filed with the Petition.

**Local Rule 1007-2(a)(5)**

26.     The Debtor does not have any secured creditors.

**Local Rule 1007-2(a)(6)**

27.     A balance sheet will be filed separately.

**Local Rule 1007-2(a)(7)**

28.     There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

29.     None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

30.     Some of the Debtor's property, mainly consisting of computers, is located on each of the six current project sites.

**Local Rule 1007-2(a)(9)**

31.     The Debtor operates its business from its primary offices located at 11 Stearns Ridge, Irvington, New York.

32.     The Debtor had secondary offices located at 535 Eighth Avenue, 12th Floor, New York, NY.  However, the Debtor undertook cost-saving measures and recently sublet the entire

12th floor.

33.     The Debtor recently entered into a new lease for smaller, less expensive

secondary offices at 22 Cortlandt Street, New York, NY.  The move is currently underway.

**Local Rule 1007-2(a)(10)**

34.     The Debtor's assets and records are located at its principal place of business at 11

Sterns Ridge, Irvington, NY 10533.

**Local Rule 1007-2(a)(11)**

35.     There are two legal actions pending against the Debtor, the Sky Action and the

Hart Action, as described above.

**Local Rule 1007-2(a)(12)**

36.     The Debtor's senior management includes Alen Gershkovich, president and sole

shareholder

**Local Rule 1007-2(b)(1) and (2)**

37.     The Debtor's estimated weekly payroll to employees for the thirty (30) day period

following the Chapter 11 petition is $88,000.00.

38.     The Debtor's estimated weekly payroll and payments to officers, stockholders,

and directors for the thirty (30) day period following the Chapter 11 petition is $22,000.00.

**Local Rule 1007-2(b)(3)**

39.     The Debtor estimates that it will break even in the 30-day period following the

filing of the chapter 11 petition.  A 30-day budget will be filed separately.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is

true and correct.

By:  _/s/ Alen Gershkovich_____
        Alen Gershkovich, President

6